No. 2015-1621

# United States Court of Appeals for the Federal Circuit

———————————

RON KRAMER, SAL ABRAHAM & THERMOLIFE
INTERNATIONAL LLC,

*Plaintiffs-Appellants,*

v.

CREATIVE COMPOUNDS, LLC,

*Defendant-Appellee.*

---

**Appeal From The United States District Court For The District of Arizona
In Case No. 2:11-CV-01965, Judge James A. Teilborg**

---

**BRIEF OF DEFENDANT-APPELLEE**

---

NELSON D. NOLTE
NOLTE LAW FIRM
918 PONTOISON DR.
MANCHESTER, MO
63021
314-266-6771
NN@NOLTEFIRM.COM

*Attorney for Defendant-Appellee*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for defendant-appellee hereby certifies the following:

1.     The full name of every party represented by me is:

Creative Compounds, LLC

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

The real parties in interest are named in the caption.

3.     All parent corporations and any publicly held companies that own 10 percent of more of the stock of the party or amicus curiae represented by me are:

None

4.     The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are appearing in this Court are:

Adam S Kunz  - Jaburg & Wilk PC

Maria Crimi Speth - Jaburg & Wilk PC

Thomas J DeGroot - Law Offices of Thomas DeGroot LLC

Matthew A Rosenberg - Law Offices of Matthew Rosenberg LLC

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED CASES ...................................................vi

STATEMENT OF ISSUES ................................................................. 1

STATEMENT OF THE CASE AND FACTS ....................................... 1

SUMMARY OF ARGUMENT ............................................................ 5

STANDARD OF REVIEW ................................................................. 7

ARGUMENT ...................................................................................... 9

I.    THE DISTRICT COURT CORRECTLY IDENTIFIED THE
      APPROPRIATE STANDARD FOR A "PREVAILING PARTY"
      AND THERMOLIFE'S CASE LAW IS NOT FACTUALLY
      ON POINT.................................................................................. 9

II.   THERMOLIFE IS WRONG THAT THE LEGAL
      RELATIONSHIP OF THE PARTIES WAS MATERIALLY
      CHANGED AS A RESULT OF THE DISTRICT COURT'S
      SUMMARY JUDGMENT OF NO INVALIDITY.................................... 13

III.  THERMOLIFE IS INCORRECT THAT ALL OF ITS CLAIMS WERE
      DISMISSED WITHOUT PREJUDICE ....................................... 17

IV.   UNDER THE KESSLER DOCTRINE CREATIVE OBTAINED
      MORE RELIEF THAN THERMOLIFE....................................... 19

V.    THERMOLIFE INTERNATIONAL, LLC INDIVIDUALLY CANNOT BE
      A PREVAILING PLAINTIFF BECAUSE IT WAS NOT A PATENT
      INFRINGEMENT PLAINTIFF AND VOLUNTARILY DISMISSED ITS
      ONLY CLAIM FOR UNFAIR COMPETITION ....................................... 22

CONCLUSION ............................................................................................................... 23

ADDENDUM.................................................................................................................... 24

# TABLE OF AUTHORITIES

Page

## CASES

*Highmark Inc. v. Allcare Health Management System, Inc.*,
572 U.S. ___, 134 S. Ct. 1744, 1749 (2014)........................................................7

*SSL Services, LLC v. Citrix Systems, Inc.*, 769 F.3d 1073, 1086 (Fed.Cir. 2014).....7

*Stone Container Corp. v. U.S.*, 229 F.3d 1345, 1349-50 (Fed.Cir. 2000)................ 8

*Studiengesellschaft Kohle v. Eastman Kodak Co.,*
713 F.2d 128 (5th Cir.1983) ............................................................. 8-9

*Northbrook Excess and Surplus Ins. Co. v. Commercial Union Ins. Co.*,
924 F.2d 633, 642 (7th Cir.1991) .................................................... 8-9

*Manildra Milling Corp. v. Ogilvie Mills, Inc.*,
76 F.3d 1178 (Fed.Cir. 1996)................................................. 8-10, 12

*Energy Transp. Group v. William Demant Holding*,
697 F.3d 1342 (Fed.Cir. 2012)...................................................9

*Shum v. Intel Corp.*, 629 F. 3d 1360 (Fed. Cir., 2010) ...................................... 9-12

*Farrar v. Hobby*, 506 U.S. 103 (1992) ............................................. 9-10

*Inland Steel Co. v. LTV Steel Co.*, 364 F. 3d 1318 (Fed.Cir. 2004) .................. 10-11

*Epic Metals Corp. v. H.H. Robertson Co.* 870 F.2d 1574 (Fed.Cir. 1989) .............14

*Foster v. Hallco Mfg. Co.,* 947 F.2d 469 (Fed.Cir.1991) .................................. 13-15

*Hallco Mfg. Co. v. Foster,* 256 F.3d 1290 (Fed.Cir. 2001) ............................... 14-16

*Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed.Cir. 2014)........................ 19-21

*Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 114 S.Ct. 1510 (1994) ................ 8

iv

## STATUTES AND RULES

28 U.S.C. § 285 ....................................................................................3, 5, 7, 9, 22

Federal Rule of Civil Procedure 54 ...................................................................7, 22

## <u>STATEMENT OF RELATED CASES</u>

The present case was the subject of a previous appeal before this court: Ron Kramer, Sal Abraham, and Thermolife LLC v. Creative Compounds, LLC, Docket No. 2014-1284.

## STATEMENT OF THE ISSUE

*Prevailing Party:* Whether Appellants were the prevailing party in the District Court when they obtained none of the relief requested when their claims for direct infringement and contributory patent infringement were dismissed, when summary judgment was entered against their claim for inducement of patent infringement, and their claim for false advertising was voluntarily dismissed and the only ruling in their favor was that the patent-in-suit was not declared invalid.

## STATEMENT OF THE CASE AND FACTS

Appellee Creative Compounds, LLC ("Creative") is in the business of selling bulk raw ingredients to the food industry with an emphasis on the sports nutrition and dietary supplement segments of the industry.    (JA 51, ¶ 7).   On or about September 22, 2011, Creative sent an email to about eleven potential customers that it would begin selling diiodothyroacetic acid ("DIAC"), which is a major metabolite of the natural thyroid hormone, triiodothyronine, as a bulk raw ingredient.  (JA 51, ¶ 7; JA 46, 48).  Creative indicated that it would sell DIAC as a raw ingredient (i.e. not as dietary supplement).  (JA 46, 48).  One of the email recipients was Appellant Thermolife International, LLC ("Thermolife").  (JA 46).

Appellants Ron Kramer and Sal Abraham are the owners of, and the listed inventors on, U.S. Patent No. 7,919,533 ("the '533 Patent").  (JA 25-26, ¶¶ 1,6).  The '533 Patent claims methods of using DIAC to increase lean body mass and a dietary

1

supplement comprising DIAC. (JA 7). Mr. Kramer and Mr. Abraham are associated with Thermolife International, LLC, with at least Mr. Kramer being its founder. (JA 28-29, ¶¶ 18, 25). In this brief, Mr. Kramer, Mr. Abraham and Thermolife are collectively referred to as "Thermolife".

On September 22 and 23, 2011, Mr. Kramer sent e-mails to Creative complaining about Creative's entry into the market for DIAC, identifying the '533 patent and threatening litigation. (JA 52, ¶¶ 17-20).

Based upon those threats, on September 23, 2011, Creative filed suit in the E.D. of Missouri for a declaratory judgment that it did not infringe the '533 patent directly or contributorily and also did not induce the infringement of others. (JA 50-54). Creative also sought a declaration that the '533 patent was invalid. (JA 50-54).

Apparently without investigating whether any actual sale or offer for sale of bulk DIAC had been made, Appellants followed by filing a four count complaint in the District of Arizona on October 7, 2011. (JA 25-39). The complaint alleged direct infringement, inducement of infringement, contributory infringement and false advertising. (JA 33-37). Though it had filed first, Creative agreed to transfer the Missouri case to Arizona where the cases were consolidated.

In March of 2013, Thermolife filed a motion requesting 1) summary judgment of infringement and 2) summary judgment against Creative's defense of patent invalidity. (JA 68-88). Creative also filed a motion for summary judgment of

invalidity of claim 11 of the '533 patent, the only patent claim asserted against Creative by Thermolife.  (JA 327-339).

On summary judgment, the District Court denied Creative's motion for summary judgment of invalidity, but granted summary judgment that Creative was not an inducer of infringement as alleged in Count II of Thermolife's complaint.  (JA 427-438).   The Court also dismissed Counts I and III (direct and contributory infringement) as not ripe because the email sent by Creative to the eleven market participants did not rise to the level of an offer for sale.  (JA 438).  While the Court termed its dismissal of infringement claims as one for lack of ripeness, it could also just have easily granted summary judgment in view of Thermolife's failure to have triable evidence of an offer for sale.

As to Thermolife's motions for summary judgment, the District Court held Creative did not have sufficient evidence to overcome the '533 patent's presumption of validity by the clear and convincing standard required at trial, but denied Thermolife motions for summary judgment of infringement.  (JA 438).  Thermolife voluntarily dismissed its claim for unfair competition.   Creative appealed the summary judgment ruling on validity in favor of Thermolife and this Court affirmed. (JA 755).

Before the appeal, Thermolife filed a bill of costs and filed a motion for attorney fees and non-taxable expenses under 35 U.S.C. § 285.  (JA 464-481).  After

the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), the parties rebriefed the attorney fee motion in view of *Octane Fitness* and, after appeal, Thermolife filed a supplemental motion for attorney fees incurred on appeal. (JA 759-766).

On March 19, 2015, the District Court issued its order denying attorney fees and non-taxable costs and also upholding Creative's objection to Thermolife's bill of costs. (JA 892-897). The reasoning provided by the District Court was that while Thermolife was successful in defending its patent from Creative's validity challenge, summary judgment was also rendered against Thermolife on its inducement of infringement claim and its direct and contributory infringement claims were dismissed because Thermolife could not prove the existence of an offer for sale that would support an infringement claim. (JA 892-897).

The District Court reasoned that:

> Plaintiffs contend that the present case is similar to *Kellogg v. Nike, Inc.*, 74 Fed. R. Serv. 3d 1028 (D. Neb. 2009). (Doc. 98 at 9). The Court disagrees. In *Kellogg*, the court found that Nike continuously pursued frivolous claims; Nike's claims were without merit; and "Nike engaged in litigation misconduct during the trial." *Kellogg*, 74 Fed. R. Serv. 3d at *12. The court in *Kellogg* further found that "[i]n light of Nike's unjustified prosecution of the invalidity claim, its litigation misconduct and borderline abusive advocacy, costs cannot justly be assessed against Kellogg. Although Nike is the prevailing party with respect to infringement, Kellogg is the equivalent of a prevailing party with respect to the invalidity claim." *Id.* at *13. However, here, none of *Kellogg's* facts are similar to the present case. **The Court finds for only the purpose of determining a prevailing party that there has been no litigation misconduct nor abusive advocacy, Plaintiffs did**

4

**not succeed with respect to their infringement claim, and Defendant did not succeed with respect to his invalidity claim.** The Court does not find the facts of Kellogg to be similar to the present case. Thus, the Court finds that Plaintiffs are not a prevailing party under § 285.

(JA at 895-896)(emphasis supplied).  As a result, no party obtained any of the relief that it initially sought when the case was filed, and neither party was a prevailing party.  Finding the existence of a prevailing party to be a threshold requirement for a grant of attorney fees under 35 U.S.C. § 285, Thermolife's motions were denied. (JA 896).

## SUMMARY OF ARGUMENT

The District Court's determination that neither was a prevailing party was the correct decision because neither side obtained any of the relief that it sought and the legal relationship of the parties with respect to one another remains unchanged. Thermolife incorrectly argues to the Court that "Creative cannot challenge the validity of the '533 Patent ever again" and uses this incorrect assertion to support its conclusion that the legal relationship has changed.  Thermolife was granted no material relief that altered the relationship of the parties.  Its claims for infringement all failed, and it left the litigation only with its patent still intact.

Thermolife also incorrectly argues that the District Court granted Creative no affirmative relief, though the District Court entered summary judgment in favor of Creative on the Thermolife's inducement of infringement claim and did not dismiss

that claim without prejudice.

Thermolife also argues that because claims were dismissed without prejudice that Creative obtained no relief.  However, this argument is a red herring because, with or without prejudice, the facts remain that Thermolife filed suit for direct infringement and indirect infringement, that Thermolife had no evidence of the existence of any actual infringing act, and lost on all of its affirmative claims. Despite losing all of the claims that it brought, Thermolife asks the Court to declare it is a prevailing party because its patent was not *also* declared invalid.

Next, if dismissal with prejudice is a material change in the parties for this case, Creative should be the prevailing party because, despite Thermolife's argument to the contrary, the District Court rendered summary judgment against its inducement of infringement.  Under the *Kessler* doctrine, Creative cannot be liable to Thermolife for inducement of infringement for the bulk DIAC product discussed in the email that precipitated this lawsuit.  As a result, the relationship of the parties was changed in Creative's favor as a result of the lawsuit and Creative should be the prevailing party.

Next, Thermolife International, LLC (apart from the other appellants Ron Kramer and Sal Abraham) is not a prevailing party.  There is no allegation that Thermolife International, LLC is a patent owner or an exclusive licensee. Thermolife International, LLC was plaintiff only for Count IV of the complaint

(alleging unfair competition).  Because it was never a patent infringement plaintiff, it cannot be a prevailing party for purposes of 35 U.S.C. § 285.  Only Sal Abraham and Ron Kramer were alleged to be patent owners. (JA 27, ¶¶ 9-10).

Thermolife Internal, LLC also cannot be a prevailing party for costs under Fed. R. Civ. P. 54 because it voluntarily dismissed Count IV-- its only claim for relief.

Finally, Thermolife's cases are not on point and factually differentiable from the present case.

## STANDARD OF REVIEW

The Supreme Court has held "that an appellate court should apply an abuse-of-discretion standard in reviewing *all aspects* of a district court's § 285 determination". *Highmark Inc. v. Allcare Health Management System, Inc.*, 572 U.S. ___, 134 S. Ct. 1744, 1749 (2014).  Central to the *Highmark* holding was the language of 35 U.S.C. § 285 which states:  "The court in exceptional cases may award reasonable attorney fees *to the prevailing party*." 35 U. S. C. §285 (emphasis supplied). *Id.*

After *Highmark*, this Court heard *SSL Services, LLC v. Citrix Systems, Inc.*, 769 F.3d 1073, 1086 (Fed.Cir. 2014), where the court stated the standard of review for determining who was a prevailing party for purposes of Fed. R. Civ. P. 54 and 35 U.S.C. § 285 was *de novo*.  However, in that case neither party argued that

*Highmark* altered the standard of review, or argued the appropriate standard of review in briefs at all. This would be the first case in which the Court has considered whether *Highmark* changed the standard of review for determination of a prevailing party.

Therefore, the statement in *SSL Services* of the appropriate standard of review is merely *obiter dicta*, to which this panel is not bound, and conflicts with the Supreme Court *Highmark* decision.

"As a subordinate federal court, we do not share the Supreme Court's latitude in disregarding the language in its own prior opinions. As the Supreme Court cautioned in *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312, 114 S.Ct. 1510,128 L.Ed.2d 274 (1994), 'once the [Supreme] Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law.' The Supreme Court can accept for review only a limited number of cases, and it must give guidance to the lower federal and state courts in broad language. Here, the Court's statements are both explicit and carefully considered, and we must follow them." *Stone Container Corp. v. U.S.*, 229 F.3d 1345, 1349-50 (Fed.Cir. 2000)(footnotes omitted).

Requiring the application the abuse of discretion standard of review to the determination of prevailing party is not a strange concept. "The Fifth and Seventh Circuits appear to treat the issue of prevailing party as lying within the district court's

discretion.  See *Studiengesellschaft Kohle v. Eastman Kodak Co.,* 713 F.2d 128, 131 (5th Cir.1983); *Northbrook Excess and Surplus Ins. Co. v. Commercial Union Ins. Co.*, 924 F.2d 633, 642 (7th Cir.1991)."  See *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1181 (Fed.Cir. 1996).

Moreover, a decision not to award costs and factual findings made in support thereof are reviewed for abuse of discretion. *Energy Transp. Group v. William Demant Holding*, 697 F.3d 1342, 1358 (Fed. Cir. 2012).

Since the language of *SSL Services* is mere *dicta*, and the issue of the standard of review was the central point of *Highmark*, the Supreme Court's *Highmark* decision provides clear instruction and broad language that **"all aspects"** of a § 285 decision should be reviewed under an abuse of discretion standard.  Therefore, this panel should decide that the appropriate standard of review is abuse of discretion.

## ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY IDENTIFIED THE APPROPRIATE  STANDARD FOR A "PREVAILING PARTY" AND THERMOLIFE'S CASE LAW IS NOT FACTUALLY ON POINT

"To be a "prevailing party," our precedent requires that the party have received at least some relief on the merits. That relief must materially alter the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party." *Shum v. Intel Corp.*, 629 F. 3d 1360, 1367

(Fed. Cir., 2010) *citing  Farrar v. Hobby*, 506 U.S. 103, 111-13 (1992); see also JA 894.

The District Court further correctly identified *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178 (Fed.Cir. 1996), as controlling precedent.   In *Manildra Milling*, the Court held that an infringement defendant who successfully obtained judgment that the plaintiff's patent was invalid was a prevailing party.  *Id.* at 1183.   However, as the District Court noted, *Manildra Mill* is not factually similar to the present case.  (JA 894).  In *Manildra Mill*, the defendant's "victory on the patent issues was complete."  *Manildra* at 1183.  As a result, the invalidity ruling was actual relief granted on the merits of the plaintiff's affirmative claim and permanently altered the parties' legal relationship—the infringement defendant could practice the claimed invention.

The facts of *Manildra Milling* are not instructive in this case because Thermolife's direct and contributory infringement claims were dismissed because it could not prove the existence of an infringing sale, and the District Court rendered summary judgment against Thermolife's claim for inducement of infringement. Likewise, Creative did not succeed on its invalidity defense.  Therefore, as opposed to *Manildra Milling* where victory "was complete," no party in this case obtained the relief on the merits that it sought and the legal relationship of the parties remains unchanged.

Thermolife's argument that *Inland Steel Co. v. LTV Steel Co.*, 364 F. 3d 1318 (Fed.Cir. 2004) — a case not cited to the District Court— is instructive is incorrect. In *Inland Steel*, the defendant was found to infringe in a trial where infringement and validity were bifurcated. *Id.* at 1319. The second trial on validity and damages was stayed pending reexamination in the PTO where the patent was found invalid. *Id.* at 1320. The District Court then entered judgment in favor of defendant on infringement and dismissed the invalidity claim as moot. *Id.* The District Court refused to determine that the defendant was a prevailing party. *Id.* This Court reversed holding that the defendant was the prevailing party, despite the finding of infringement by the jury, because the Court entered judgment in defendant's favor on infringement after the patent was held invalid by the PTO. *Id.* at 1319. Again, just as in *Manildra Milling*, one party was the clear winner. The defendant was successful in obtaining a holding of no infringement and (separately) invalidated the patents-at-issue. The holding by the court was permanent and allowed the defendant to continue using the claimed technology. One party received relief on the merits and the legal relationship of the parties was clearly permanently changed.

Thermolife also cites *Shum v. Intel Corp*, 629 F.3d 1360, 1363-64 (Fed.Cir. 2010), where this Court affirmed the district court's conclusion that the defendant was the prevailing party. In *Shum*, two business partners, Shum and Verdiell, liquidated a business which was then sold to Intel. *Id.* at 13-64-65. Shum sued

Verdiell under various state law claims seeking $409M in damages and also correction of inventorship of seven patents either adding himself as inventor or making himself sole inventor on the patents. *Id.* After protracted litigation, Verdiell succeeded on the state law claims (paying none of the $409M to Shum), and Shum was added as inventor on five of seven patents. *Id.* This District Court held that both were prevailing parties and awarded the net costs to Verdiell. *Id.* at 1365-66.

This Court overturned and held that while it possible for there to be no prevailing party, both parties can't be prevailing parties. *Id.* at 1373. This Court identified that while each party won some relief, not all relief is created equal, and that addition as a co-inventor was not quite the same as $409M. *Id.* at 1368 ("[t]his case was about the money.").

This Court went on to hold that "[n]ot every alteration in the legal relationship between parties, however, satisfies our prevailing party test. Instead, the alteration must be (1) material and (2) 'modify[ ] the defendant's behavior in a way that directly benefits the plaintiff.'" *Id. quoting Manildra Milling*, 76 F.3d at 1182 (*quoting Farrar*, 506 U.S. at 111-13).

Thermolife cites to *Shum* for the proposition that the Court identified a "central issue" test, which it did not.[1]   The Court merely decided that Shum's "limited victory" on correction of inventorship "has not modif[ied] defendants' behavior in a way that significantly benefits Shum."   Therefore, on the law, *Shum* merely reaffirms precedent and does not create a "central issue" test.   On the facts, both parties in Shum won some victory on their own affirmative claims.   In the present case, only Thermolife presented affirmative claims, succeeded on none and merely succeeded in defeating an affirmative defense to infringement claims that had already failed.

## II.    THERMOLIFE IS WRONG THAT THE LEGAL RELATIONSHIP OF THE PARTIES MATERIALLY CHANGED AS A RESULT OF THE DISTRICT COURT'S SUMMARY JUDGMENT OF NO INVALIDITY

In its brief, Thermolife argues that the decision in Thermolife's favor on Creative's invalidity defense altered the parties legal relationship because "Creative cannot challenge the validity of [*sic*] '533 Patent ever again" and has *res judicata* effect.   Opening Br. at p. 16.   While Thermolife has identified two of three cases that

---

[1] Puzzlingly, after arguing that *Shum* supported a "central issue test", in a footnote, Thermolife admits that the central issue test does not apply here, "but if it did" Thermolife cherry-picks a communication from settlement discussions to somehow support the theory that invalidity, and not infringement, is all that mattered to Creative and was the "central issue."   At the point in time of the comment, neither party had argued that there was no offer for sale, as Judge Teilborg raised that issue *sua sponte*.

explain the law of claim preclusion and issue preclusion, it has misinterpreted the law and incorrectly concluded that claim preclusion[2] applies to Creative's ability to challenge the validity of Thermolife's '533 patent.

*Epic Metals Corp. v. H.H. Robertson Co.*[3], *Foster v. Hallco Mfg. Co.,* ("*Foster*")[4], and *Hallco Mfg. Co. v. Foster* ("*Hallco*")[5], each set out the law of issue and claim preclusion with respect to patent validity. *Epic* determined whether a term of a consent judgment acknowledging the validity of a patent precludes later litigation on the matter. *Epic* at 1577. In *Epic*, the accused device was the same in the first and second actions. *Id.* The answer was that, unless expressly reserved, the ability to litigate patent validity after acknowledging validity in a consent judgment removed the ability of the same parties to relitigate the validity issue *for the same device*. *Id.*

Two years later in *Foster*, the question was the effect of a prior consent judgment in which Foster had admitted both that Hallco's patent was valid and that

---

[2] Because *res judicata* and collateral estoppel has been confused in older case law, the terms "claim preclusion" and "issue preclusion" are used in this brief. See *Foster v. Hallco Mfg. Co.*, 947 F.2d 469 (1991)("Foster") ([B]ecause *res judicata* can also be used in the sense of any preclusion of litigation arising from a judgment, including collateral estoppel, when discussing the different concepts, courts … for clarity have substituted the terms 'claim preclusion' and 'issue preclusion.')
[3] 870 F.2d 1574 (Fed. Cir. 1989)
[4] 947 F.2d 469 (Fed.Cir. 1991)
[5] 256 F.3d 1290 (Fed Cir. 2001)

he infringed. *Foster* at 472-473. After the consent judgment had been rendered, Hallco again sued Foster for infringement under the same patent, but regarding a different device, and Foster challenged the validity of the patent. *Id.* The *Foster* court held that the earlier settlement and consent judgment would operate to bar a challenge to the validity of the patent claims at issue in the first suit only if the accused device was "essentially the same" as the previous device admitted to infringe, or that any changes were merely "colorable" or "unrelated to the limitations in the claims of the patent." *Id.* at 479-80.

In *Hallco*, the Court found that the holding of *Foster* respect to consent judgments also applied to dismissals with prejudice and settlement agreements that did not reserve the ability to challenge validity. *Hallco* at 1292. That is, when a case is dismissed with prejudice, issue preclusion only applies to the accused product in question and any product that is "essentially the same." *Id.* at 1298.

Therefore, Thermolife's argument that summary judgment in favor of it on the invalidity defense gives it an unqualified immunity from an invalidity challenge is legally incorrect.

Muddying the water even further is the fact that there never was an accused product in this case. The District Court held that no product ever was made, used, sold, offered for sale or imported. Thermolife and Creative engaged in threats of litigation and then litigation before Creative ever sourced or sold or offered for sale

a product.  Therefore, in a subsequent suit, if ever, there could be no comparison between a product of the first suit and a product of the second suit to determine whether a validity challenge was estopped.

Even if a court held that the product advertised by Creative in the initial marketing email that led to this action formed the "product" of a first suit, that advertised, proposed product was only the bulk ingredient DIAC and not a method of using DIAC as in claims 1-10 of the '533 patent or a "dietary supplement" comprising DIAC as in claims 11-15.[6]  There is no path to direct infringement of the '533 patent for sale of the known, bulk ingredient DIAC not yet in the form of a "dietary supplement."

Additionally, since no bulk ingredient was ever sold or offered for sale to third parties for use in the method of claims 1-10 or the "dietary supplement" claims of 11-15, there also is no "first product" for an indirect infringement claim.

Finally, Creative is not precluded from requesting *ex parte* reexamination or *inter partes* review for patent invalidity based upon prior patents and printed publications **for any product**.  Particularly, now that *inter partes* review has been implemented, it has become the preferred venue for challenging patent validity due to its statutorily-mandated timeline, limited discovery, more predicable costs, and

---

[6] The '533 patent itself admits that diiodothyroacetic acid was known outside of "dietary supplement".  See '533 patent,

lower burden of proof of invalidity. Even if Thermolife was correct that Creative was barred from challenging the validity of the '533 patent in every possible future litigation, which it is not, Creative may still seek reexamination or review of '533 patent administratively. This is a real fact that should be considered by the Court to determine whether Thermolife's success on Creative's defense of invalidity is a real victory or a hollow victory that does not materially change the parties' relationship.

As a result, Creative submits that there is no claim preclusion for patent invalidity to alter the parties' relationship, but certainly no absolute claim preclusion for patent invalidity *for any product* that could alter the parties' relationship in any material way.

## III.    THERMOLIFE IS INCORRECT THAT ALL OF ITS CLAIMS WERE DISMISSED WITHOUT PREJUDICE

Thermolife argues that the parties' legal relationship was not materially altered in Creative's favor because Thermolife claims for direct infringement, contributory infringement and inducement of infringement were dismissed without prejudice. This is incorrect because Judge Teilborg actually rendered summary judgment on Thermolife's claim II- inducement of infringement for failure to prove the existence of a third party direct infringer that is required to *induce* the infringement of another.

Judge Teilborg could also have, instead of deciding to dismiss Thermolife's

Count III for contributory infringement as not ripe, decided to render summary judgment for the same reason as Count II—that contributory infringement requires a third party direct infringer of which Thermolife had no evidence. Judge Teilborg could also have rendered summary judgment on Count I- direct infringement because, as Judge Teilborg found, there was no evidence of making, using, selling, offer for sale, or importation of ***anything***.

The fact that Judge Teilborg could have rendered judgment on alternative grounds that had the words "with prejudice" in them is clear but does not make Creative or Thermolife more or less of a prevailing party, but exposes Thermolife's argument as illusory that because two of three claims were dismissed without prejudice, it is less of a loser.

The fact is that Thermolife sued on an infringement that did not exist, but Thermolife had nothing to lose because its threatened litigation could keep a product off the market before a potential competitor even existed. In that sense, perhaps Thermolife won an illicit goal, but one this Court should not reward. With Thermolife's threatening of infringement one day after Creative's email introducing a product, Thermolife knew it could put a chilling effect on competition for DIAC. It wasn't concerned about whether an actual infringement existed; it was concerned about shutting down a market participant. Thermolife is not a stranger to patent litigation and should be aware that proof of an actual infringement is required for an

infringement case[7].  Thermolife itself has filed over 130 patent infringement cases since 2011.  See Addendum.

The argument that dismissal of Thermolife's claims was with or without prejudice is a red herring.  The facts are that Thermolife filed suit against non-existent direct infringement and indirect infringements, that Thermolife never had evidence of an actual infringement's existence, and lost on that basis.  Thermolife now comes to this Court on the heels of its loss and asks the Court to declare it is the prevailing party due to the fact that its patent was not also declared invalid.  If such a hollow victory can be claimed to render a party a "prevailing" party, then much uncertainty and many appeals will result.

## IV.    UNDER THE *KESSLER* DOCTRINE CREATIVE OBTAINED MORE RELIEF THAN THERMOLIFE

Because the District Court rendered summary judgment in Creative's favor on the inducement of infringement claim, the parties' relationship was also altered in favor of Creative due to the *Kessler* doctrine.

The *Kessler* doctrine fills a gap left by claim preclusion and issue preclusion by preventing a patent owner or its licensee from accusing a product of infringement of a patent if that product was previously found not to infringe that patent, even as

---

[7] Creative concedes that no argument was made below that Thermolife's prefiling investigation was inadequate.

to post-judgment sales of that product and even as to non-asserted claims of the patent. *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056-57 (Fed.Cir. 2014).

In *Brain Life,* a predecessor company (MIDCO) sued Elekta Inc. for patent infringement, accusing three of Elekta's products. *Id.* at 1049-50. MIDCO initially asserted a number of system and method claims. *Id.* at 1050. It later did not oppose a motion to dismiss the method claims, and they were dismissed without prejudice. *Id.* A jury found that Elekta infringed the system claim and awarded $16 million in damages. *Id.* The Federal Circuit reversed the infringement finding and vacated the damages award. *Id.*

Later, MIDCO licensed Brain Life under the patent. *Id.* at 1050-51. Brain Life then sued Elekta for infringement of the very same patent, accusing three of the four products that MIDCO had previously accused but asserted only the previously abandoned method claims. *Id.* at 1051. Elekta filed a motion to dismiss the litigation, which the district court granted, finding that MIDCO could have pursued the method claims in the earlier litigation but chose not to, barring Brain Life's right to later pursue them. *Id.* Brain Life appealed the district court's determination.

On appeal, this Court agreed that Brain Life's infringement suit for the method claims was barred against Elekta's previously accused products, but determined that the *Kessler* doctrine—not issue or claim preclusion—created the bar. *Id.* at 1056-59. Regarding a fourth Elekta product, which MIDCO never accused previously,

20

the Federal Circuit held that Brain Life's infringement suit was not barred by the *Kessler* doctrine. *Id.* at 1059.

The *Kessler* doctrine came from the Supreme Court's decision in *Kessler v. Eldred,* 206 U.S. 285, 289 (1907), which held that when an accused product is found to be noninfringing in a patent infringement litigation, the prevailing accused infringer has the right to manufacture, use, and sell the noninfringing product. In other words, once a court finds that an accused product does not infringe a patent, that accused product obtains a noninfringing status as to the asserted patent that bars the patent owner from later accusing the same product of infringement of the same patent, even if different claims are being asserted.

In this case, if the Court finds that the summary judgment decision in Thermolife's favor on Creative's defense of validity altered the parties' relationship in Kramer's favor, then the summary judgment in favor of Creative on inducement of infringement similarly altered the parties relationship in Creative's favor. This is because Creative can now sell the bulk DIAC ingredient that was discussed in Creative's email without fear of suit for inducement of infringement of any claim of the '533 patent even though only claim 11 was asserted and found not infringed.

## V.    THERMOLIFE INTERNATIONAL, LLC INDIVIDUALLY CANNOT BE A PREVAILING PLAINTIFF BECAUSE IT WAS NOT A PATENT INFRINGEMENT PLAINTIFF AND VOLUNTARILY DISMISSED ITS ONLY CLAIM FOR UNFAIR COMPETITION

While Creative has referred to appellants Sal Abraham, Ron Kramer and Thermolife International, LLC collectively as "Thermolife" in this brief, Creative submits that Thermolife International, LLC (separately) cannot succeed in claiming that the District Court should have named it a prevailing party because there was no allegation that Thermolife International, LLC is a patent owner or was an exclusive licensee of the '533 Patent.  See Complaint (JA 25-39).

Further this court may take judicial notice that no assignment from Messrs. Kramer and Abraham has been recorded with the USPTO.    (See http://assignment.uspto.gov/#/search?adv=patNum%3A7919533&q=&sort=patAssignorEarliestExDate%20desc%2C%20id%20desc&synonyms=false).

Thermolife International, LLC was a plaintiff only for Count IV of the complaint alleging unfair competition, so it cannot be a prevailing party for purposes of 35 U.S.C. § 285 since it was not a patent infringement plaintiff.   Only Sal Abraham and Ron Kramer were alleged to be patent owners. (JA 27, ¶¶ 9-10).

Thermolife International, LLC further cannot be a prevailing party for costs under Fed. R. Civ. P. 54 because it voluntarily dismissed Count IV-- its only claim for relief.

## CONCLUSION

This Court should affirm the judgment of the District Court finding that neither party was a prevailing party.


Dated:  September 17, 2015                    Respectfully submitted,


                                              /s/ Nelson D. Nolte
                                               Nelson D. Nolte
                                               NOLTE LAW FIRM
                                               918 Pontoison Dr.
                                               Manchester, MO 63021
                                               636-266-6771

                                               *Attorney for Defendant-Appellee*


## CERTIFICATE OF SERVICE

I certify that on September 17, 2015, the foregoing BRIEF OF DEFENDANT-APPELLEE was filed electronically using the CM/ECF system, which will send notification of such filing to counsel of record for Plaintiffs-Appellants.


                                              /s/ Nelson D. Nolte
                                              *Attorney for Defendants-Appellants*

## Addendum -- Thermolife Patent Cases

| | Plaintiff | Court | Case No. | Case Type | Date Opened | Date Closed |
|---|---|---|---|---|---|---|
| 1 | ThermoLife International LLC | FL SD | 0:2014-cv-61864 | 830 | 8/18/2014 | |
| 2 | Thermolife International, LLC | GA ND | 1:2015-cv-00892 | 830 | 3/27/2015 | |
| 3 | Thermolife International, LLC | GA ND | 1:2015-cv-00893 | 830 | 3/27/2015 | |
| 4 | Thermolife International, LLC | GA ND | 1:2015-cv-00894 | 830 | 3/27/2015 | |
| 5 | Thermolife International LLC | CA ED | 2:2010-cv-02569 | 830 | 9/21/2010 | 10/28/2010 |
| 6 | ThermoLife International LLC | AZ | 2:2011-cv-01256 | 830 | 6/24/2011 | 3/28/2012 |
| 7 | ThermoLife International LLC | AZ | 2:2011-cv-02469 | 830 | 12/13/2011 | |
| 8 | ThermoLife International LLC | AZ | 2:2012-cv-00144 | 830 | 1/20/2012 | |
| 9 | ThermoLife International LLC | AZ | 2:2012-cv-00228 | 830 | 2/1/2012 | 4/26/2012 |
| 10 | ThermoLife International LLC | AZ | 2:2012-cv-01466 | 830 | 7/6/2012 | |
| 11 | ThermoLife International LLC | CA CD | 2:2012-cv-09229 | 830 | 10/26/2012 | 10/15/2013 |
| 12 | Thermolife International LLC | CA CD | 2:2012-cv-10832 | 830 | 12/19/2012 | 3/6/2013 |
| 13 | Thermolife International LLC | CA CD | 2:2013-cv-00355 | 830 | 1/17/2013 | 3/6/2013 |
| 14 | ThermoLife International LLC | CA CD | 2:2013-cv-01271 | 830 | 2/21/2013 | 3/6/2013 |
| 15 | ThermoLife International LLC | CA CD | 2:2013-cv-01272 | 830 | 2/21/2013 | 3/6/2013 |
| 16 | ThermoLife International LLC | CA CD | 2:2013-cv-01273 | 830 | 2/21/2013 | 3/6/2013 |
| 17 | ThermoLife International LLC | CA CD | 2:2013-cv-01274 | 830 | 2/21/2013 | 3/6/2013 |
| 18 | ThermoLife International LLC | CA CD | 2:2013-cv-01275 | 830 | 2/21/2013 | 3/6/2013 |
| 19 | ThermoLife International LLC | CA CD | 2:2013-cv-01277 | 830 | 2/21/2013 | 3/6/2013 |
| 20 | ThermoLife International LLC | CA CD | 2:2013-cv-01280 | 830 | 2/21/2013 | 3/6/2013 |
| 21 | ThermoLife International LLC | CA CD | 2:2013-cv-01281 | 830 | 2/21/2013 | 3/6/2013 |
| 22 | ThermoLife International LLC | CA CD | 2:2013-cv-01282 | 830 | 2/21/2013 | 3/6/2013 |
| 23 | ThermoLife International LLC | CA CD | 2:2013-cv-01284 | 830 | 2/21/2013 | 3/6/2013 |
| 24 | ThermoLife International LLC | CA CD | 2:2013-cv-01285 | 830 | 2/21/2013 | 3/6/2013 |
| 25 | ThermoLife International LLC | CA CD | 2:2013-cv-01286 | 830 | 2/21/2013 | 3/6/2013 |
| 26 | ThermoLife International LLC | CA CD | 2:2013-cv-01287 | 830 | 2/21/2013 | 3/6/2013 |
| 27 | ThermoLife International LLC | CA CD | 2:2013-cv-01288 | 830 | 2/21/2013 | 3/6/2013 |
| 28 | ThermoLife International LLC | CA CD | 2:2013-cv-01289 | 830 | 2/21/2013 | 3/6/2013 |
| 29 | ThermoLife International LLC | CA CD | 2:2013-cv-01292 | 830 | 2/21/2013 | 3/6/2013 |
| 30 | ThermoLife International LLC | CA CD | 2:2013-cv-01293 | 830 | 2/21/2013 | 3/6/2013 |
| 31 | ThermoLife International LLC | CA CD | 2:2013-cv-03628 | 830 | 5/21/2013 | 7/25/2013 |
| 32 | ThermoLife International LLC | CA CD | 2:2013-cv-03630 | 830 | 5/21/2013 | 12/5/2013 |
| 33 | ThermoLife International LLC | CA CD | 2:2013-cv-04523 | 830 | 6/21/2013 | 7/24/2014 |
| 34 | ThermoLife International LLC | CA CD | 2:2013-cv-04527 | 830 | 6/21/2013 | 6/9/2014 |
| 35 | ThermoLife International LLC | CA CD | 2:2013-cv-04529 | 830 | 6/21/2013 | 5/20/2014 |
| 36 | ThermoLife International LLC | CA CD | 2:2013-cv-04534 | 830 | 6/21/2013 | 11/21/2013 |
| 37 | ThermoLife International LLC | CA CD | 2:2013-cv-06120 | 830 | 8/20/2013 | 12/19/2013 |
| 38 | Thermolife International LLC | CA CD | 2:2013-cv-06867 | 830 | 9/18/2013 | 9/23/2013 |
| 39 | Thermolife International LLC | CA CD | 2:2013-cv-06868 | 830 | 9/18/2013 | 12/2/2013 |
| 40 | Thermolife International LLC | CA CD | 2:2013-cv-06870 | 830 | 9/18/2013 | 2/10/2014 |
| 41 | Thermolife International LLC | CA CD | 2:2013-cv-06873 | 830 | 9/18/2013 | 3/26/2014 |
| 42 | Thermolife International LLC | CA CD | 2:2013-cv-06874 | 830 | 9/18/2013 | 7/21/2014 |
| 43 | Thermolife International LLC | CA CD | 2:2013-cv-06876 | 830 | 9/18/2013 | 1/17/2014 |
| 44 | Thermolife International LLC | CA CD | 2:2013-cv-06882 | 830 | 9/18/2013 | 11/19/2013 |
| 45 | Thermolife International LLC | CA CD | 2:2013-cv-06883 | 830 | 9/18/2013 | 12/9/2013 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 46 | Thermolife International LLC | CA CD | 2:2013-cv-06884 | 830 | 9/18/2013 | 11/6/2014 |
| 47 | Thermolife International LLC | CA CD | 2:2013-cv-06887 | 830 | 9/18/2013 | 1/10/2014 |
| 48 | Thermolife International LLC | CA CD | 2:2013-cv-06888 | 830 | 9/18/2013 | 3/20/2014 |
| 49 | ThermoLife International LLC | CA CD | 2:2014-cv-02449 | 830 | 4/1/2014 | 8/12/2014 |
| 50 | ThermoLife International, LLC | CA CD | 2:2014-cv-03839 | 830 | 5/19/2014 | 7/23/2014 |
| 51 | ThermoLife International, LLC | PA WD | 2:2015-cv-00273 | 830 | 2/26/2015 | |
| 52 | Thermolife International, LLC | CA SD | 3:2013-cv-00650 | 830 | 3/19/2013 | 6/21/2013 |
| 53 | Thermolife International, LLC | CA SD | 3:2013-cv-00651 | 830 | 3/19/2013 | |
| 54 | Thermolife International, LLC | CA SD | 3:2013-cv-00652 | 830 | 3/19/2013 | 2/25/2014 |
| 55 | Thermolife International, LLC | CA SD | 3:2013-cv-00653 | 830 | 3/19/2013 | 9/19/2013 |
| 56 | Thermolife International, LLC | CA SD | 3:2013-cv-00825 | 830 | 4/5/2013 | 2/10/2015 |
| 57 | Thermolife International, LLC | CA SD | 3:2013-cv-00826 | 830 | 4/5/2013 | 8/27/2013 |
| 58 | Thermolife International, LLC | CA SD | 3:2013-cv-00827 | 830 | 4/5/2013 | 8/27/2013 |
| 59 | Thermolife International, LLC | CA SD | 3:2013-cv-00828 | 830 | 4/5/2013 | 4/15/2013 |
| 60 | Thermolife International, LLC | CA SD | 3:2013-cv-00830 | 830 | 4/5/2013 | |
| 61 | Thermolife International, LLC | CA SD | 3:2013-cv-00881 | 830 | 4/12/2013 | |
| 62 | Thermolife International, LLC | CA SD | 3:2013-cv-00883 | 830 | 4/12/2013 | 11/19/2013 |
| 63 | Thermolife International, LLC | CA SD | 3:2013-cv-00884 | 830 | 4/12/2013 | 4/15/2013 |
| 64 | Thermolife International, LLC | CA SD | 3:2013-cv-00885 | 830 | 4/12/2013 | |
| 65 | Thermolife International, LLC | CA SD | 3:2013-cv-00886 | 830 | 4/12/2013 | |
| 66 | Thermolife International, LLC | CA SD | 3:2013-cv-00887 | 830 | 4/12/2013 | 9/5/2013 |
| 67 | Thermolife International, LLC | CA SD | 3:2013-cv-00888 | 830 | 4/12/2013 | 4/4/2014 |
| 68 | Thermolife International, LLC | CA SD | 3:2013-cv-00890 | 830 | 4/12/2013 | |
| 69 | Thermolife International, LLC | CA SD | 3:2013-cv-00906 | 830 | 4/16/2013 | |
| 70 | Thermolife International, LLC | CA SD | 3:2013-cv-00907 | 830 | 4/16/2013 | 4/17/2014 |
| 71 | Thermolife International, LLC | CA SD | 3:2013-cv-00908 | 830 | 4/16/2013 | 2/9/2015 |
| 72 | Thermolife International, LLC | CA SD | 3:2013-cv-00910 | 830 | 4/16/2013 | 10/22/2013 |
| 73 | Thermolife International, LLC | CA SD | 3:2013-cv-00911 | 830 | 4/16/2013 | 9/20/2013 |
| 74 | Thermolife International, LLC | CA SD | 3:2013-cv-00913 | 830 | 4/16/2013 | |
| 75 | Thermolife International, LLC | CA SD | 3:2013-cv-00914 | 830 | 4/16/2013 | |
| 76 | Thermolife International, LLC | CA SD | 3:2013-cv-01015 | 830 | 4/29/2013 | |
| 77 | Thermolife International, LLC | CA SD | 3:2013-cv-02120 | 830 | 9/10/2013 | 8/10/2015 |
| 78 | Thermolife International, LLC | CA SD | 3:2013-cv-02121 | 830 | 9/10/2013 | 4/20/2015 |
| 79 | Thermolife International, LLC | CA SD | 3:2013-cv-02142 | 830 | 9/12/2013 | |
| 80 | Thermolife International, LLC | CA SD | 3:2013-cv-02144 | 830 | 9/12/2013 | 11/21/2013 |
| 81 | Thermolife International, LLC | CA SD | 3:2013-cv-02145 | 830 | 9/12/2013 | |
| 82 | Thermolife International, LLC | CA SD | 3:2013-cv-02146 | 830 | 9/12/2013 | 12/11/2013 |
| 83 | Thermolife International, LLC | CA SD | 3:2013-cv-02148 | 830 | 9/12/2013 | 1/2/2014 |
| 84 | Thermolife International, LLC | CA SD | 3:2013-cv-02152 | 830 | 9/12/2013 | |
| 85 | Thermolife International, LLC | CA SD | 3:2013-cv-02154 | 830 | 9/12/2013 | |
| 86 | Thermolife International, LLC | CA SD | 3:2013-cv-02155 | 830 | 9/12/2013 | 2/28/2014 |
| 87 | Thermolife International, LLC | CA SD | 3:2013-cv-02156 | 830 | 9/12/2013 | 12/5/2013 |
| 88 | Thermolife International, LLC | CA SD | 3:2013-cv-02157 | 830 | 9/12/2013 | 11/21/2013 |
| 89 | Thermolife International, LLC | CA SD | 3:2013-cv-02158 | 830 | 9/12/2013 | |
| 90 | Thermolife International, LLC | CA SD | 3:2013-cv-02159 | 830 | 9/12/2013 | 11/13/2013 |
| 91 | Thermolife International, LLC | CA SD | 3:2013-cv-02160 | 830 | 9/12/2013 | 12/4/2013 |
| 92 | Thermolife International, LLC | CA SD | 3:2013-cv-02161 | 830 | 9/12/2013 | 9/19/2013 |
| 93 | Thermolife International, LLC | CA SD | 3:2013-cv-02162 | 830 | 9/12/2013 | |
| 94 | Thermolife International, LLC | CA SD | 3:2013-cv-02168 | 830 | 9/13/2013 | 11/1/2013 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 95 | Thermolife International, LLC | CA SD | 3:2013-cv-02170 | 830 | 9/13/2013 | |
| 96 | Thermolife International, LLC | CA SD | 3:2013-cv-02171 | 830 | 9/13/2013 | 2/10/2015 |
| 97 | Thermolife International, LLC | CA SD | 3:2013-cv-02172 | 830 | 9/13/2013 | |
| 98 | Thermolife International, LLC | CA SD | 3:2013-cv-02173 | 830 | 9/13/2013 | |
| 99 | Thermolife International, LLC | CA SD | 3:2013-cv-02175 | 830 | 9/13/2013 | |
| 100 | Thermolife International, LLC | CA SD | 3:2013-cv-02187 | 830 | 9/13/2013 | |
| 101 | Thermolife International, LLC | CA SD | 3:2013-cv-02188 | 830 | 9/13/2013 | |
| 102 | Thermolife International, LLC | CA SD | 3:2013-cv-02191 | 830 | 9/13/2013 | |
| 103 | Thermolife International, LLC | CA SD | 3:2013-cv-02193 | 830 | 9/13/2013 | 1/8/2015 |
| 104 | Thermolife International, LLC | CA SD | 3:2013-cv-02194 | 830 | 9/13/2013 | |
| 105 | Thermolife International, LLC | CA SD | 3:2013-cv-02195 | 830 | 9/13/2013 | 3/24/2014 |
| 106 | Thermolife International, LLC | CA SD | 3:2013-cv-02196 | 830 | 9/13/2013 | |
| 107 | Thermolife International, LLC | CA SD | 3:2013-cv-02199 | 830 | 9/13/2013 | 10/31/2013 |
| 108 | Thermolife International, LLC | CA SD | 3:2013-cv-02200 | 830 | 9/13/2013 | 12/4/2014 |
| 109 | Thermolife International LLC | CA SD | 3:2013-cv-02251 | 830 | 9/19/2013 | 12/11/2013 |
| 110 | Thermolife International, LLC | CA SD | 3:2013-cv-02256 | 830 | 9/20/2013 | |
| 111 | Thermolife International, LLC | CA SD | 3:2013-cv-02258 | 830 | 9/20/2013 | |
| 112 | Thermolife International, LLC | CA SD | 3:2013-cv-02259 | 830 | 9/20/2013 | 2/25/2014 |
| 113 | Thermolife International, LLC | CA SD | 3:2013-cv-02302 | 830 | 9/25/2013 | |
| 114 | Thermolife International, LLC | CA SD | 3:2013-cv-02303 | 830 | 9/25/2013 | |
| 115 | Thermolife International, LLC | CA SD | 3:2013-cv-02304 | 830 | 9/25/2013 | |
| 116 | Thermolife International, LLC | CA SD | 3:2013-cv-02305 | 830 | 9/25/2013 | |
| 117 | Thermolife International, LLC | CA SD | 3:2013-cv-02306 | 830 | 9/25/2013 | |
| 118 | Thermolife International, LLC | CA SD | 3:2013-cv-02308 | 830 | 9/25/2013 | |
| 119 | Thermolife International, LLC | CA SD | 3:2013-cv-02309 | 830 | 9/25/2013 | |
| 120 | Thermolife International, LLC | CA SD | 3:2013-cv-02435 | 830 | 10/9/2013 | |
| 121 | Thermolife International, LLC | CA SD | 3:2013-cv-02437 | 830 | 10/9/2013 | |
| 122 | Thermolife International, LLC | CA SD | 3:2013-cv-02438 | 830 | 10/9/2013 | 11/27/2013 |
| 123 | Thermolife International, LLC | CA SD | 3:2013-cv-02439 | 830 | 10/9/2013 | 12/4/2013 |
| 124 | Thermolife International, LLC | CA SD | 3:2013-cv-02440 | 830 | 10/9/2013 | 10/29/2013 |
| 125 | Thermolife International, LLC | CA SD | 3:2013-cv-02441 | 830 | 10/9/2013 | 2/27/2014 |
| 126 | Thermolife International, LLC | CA SD | 3:2013-cv-02443 | 830 | 10/9/2013 | |
| 127 | Thermolife International, LLC | CA SD | 3:2013-cv-02444 | 830 | 10/10/2013 | |
| 128 | Thermolife International, LLC | CA SD | 3:2013-cv-02447 | 830 | 10/10/2013 | 12/9/2013 |
| 129 | Thermolife International, LLC | CA SD | 3:2013-cv-02448 | 830 | 10/10/2013 | 11/12/2013 |
| 130 | Thermolife International, LLC | CA SD | 3:2013-cv-02451 | 830 | 10/10/2013 | |
| 131 | Thermolife International, LLC | CA SD | 3:2013-cv-02543 | 830 | 10/22/2013 | 3/4/2014 |
| 132 | Thermolife International, LLC | CA SD | 3:2013-cv-02973 | 830 | 12/11/2013 | 4/29/2014 |
| 133 | THERMOLIFE INTERNATIONAL, LLC | NJ | 3:2015-cv-02037 | 830 | 3/20/2015 | |